**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEREK LEWITTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 07 C 4210 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| ITA SOFTWARE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are two motions filed by Plaintiff Derek Lewitton: (1) a motion for an order to show cause why Defendant ITA Software should not be held in contempt [59], and (2) a motion for leave to join Google, Inc. as a third-party defendant [61]. For the reasons set forth below, the motion for an order to show cause and for contempt order [59] is denied, and the motion to join Google [61] is denied without prejudice. In addition, the Court sets forth the timing and terms (the "how and when") under which Plaintiff may exercise the stock options to which he is entitled under this Court's (and the Seventh Circuit's) prior orders and rulings.

**I.       Factual and Procedural Background[1]**

This case concerns Plaintiff Derek Lewitton's right to exercise stock options that he was granted while an employee of Defendant ITA Software. On April 14, 2005, ITA – an airline information technology and services provider – and Lewitton executed an employment contract (the "employment contract" or "employment letter"), pursuant to which Lewitton became ITA's vice president of sales. The contract provided that:

---

[1] A more detailed exposition of the facts in this case is set forth in the Court's memorandum opinion and order granting Plaintiff's motion for summary judgment [47] and in the Seventh Circuit's opinion affirming this Court's decision (see *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 378-380 (7th Cir. 2009)).

> [ITA] will grant [Lewitton], subject to approval by the ITA Board of Directors, qualified stock options to purchase up to 200,000 shares of ITA common stock, pursuant to ITA's Stock Option Plan. The exercise price will [be] equal to the fair value of the stock on the date the options are approved by the Board. These options will vest as follows[:] in equal monthly installments of 5,556 shares each, on each anniversary of [Lewitton's] employment for the next three years, except that the first twelve months of options will all vest at [Lewitton's] one-year anniversary.

[See 1, Ex. A to Ex. 1, at 1.] The contract added that upon termination of employment, "all rights to unvested stock options will terminate and the disposition of all vested but unexercised options will be subject to the Stock Option Plan." [*Id.*, at 2-3.] ITA's Board of Directors subsequently approved an options grant to Lewitton at $10 per share. According to the Stock Option Plan, the options were to expire 10 years from the date on which they were granted.

Lewitton's employment at ITA ended on May 31, 2007. (The cause and manner of the termination are unclear and do not appear to be germane to the current dispute.) ITA informed Lewitton upon his termination that he must exercise all options within 90 days of his departure. As of August 17, 2007, Lewitton exercised stock options to the extent permitted by ITA, purchasing 34,722 shares of ITA common stock. Lewitton subsequently sought to exercise options for additional shares, but was not allowed to do so.

Within 90 days of his departure from ITA, Lewitton filed suit in the Circuit Court of Cook County, Illinois, seeking declaratory relief as to his right to exercise options to the remaining ITA shares. Lewitton alleged in his complaint that, as of the termination of his employment with ITA, he possessed vested but unexercised rights to 138,889 shares of ITA common stock (calculated by multiplying the 5,556 shares that vested after each of the 25 months that Lewitton was employed by ITA) at $10 per share. Subtracting the 34,722 options that he was permitted to exercise from the 138,889 shares to which he claimed to be entitled, Lewitton asserted a right to purchase an additional 104,178 shares of ITA stock.

2

ITA removed the suit to federal court on July 26, 2007. On July 31, 2007, Judge St. Eve entered an "Agreed Order" [14] submitted by the parties. The order stated:

> If the district court determines that at the date Lewitton's employment with ITA terminated, Lewitton had vested options to purchase in excess of 34,722 shares of ITA common stock (the "Disputed Shares"), ITA agrees that it will not assert that Lewitton's right to purchase the Disputed Shares expired or that he is barred from purchasing them because the option to purchase the Disputed Shares was not exercised or the shares purchased within ninety days following the termination of his employment with ITA. *In the event that Mr. Lewitton is determined to have been entitled to exercise options to purchase Disputed Shares,* **Mr. Lewitton and ITA agree that the district court's order will determine how and when Mr. Lewitton may purchase any or all of the Disputed Shares.**

[14 (emphasis added).] Lewitton filed a motion for summary judgment [22], arguing that there was no genuine issue of material fact in dispute and that he was entitled as a matter of law to exercise his options to purchase the 104,178 disputed shares.

The case was transferred from Judge St. Eve to this Court on December 6, 2007, as part of this Court's initial calendar. [See 29.] This Court set an initial status hearing for January 11, 2008. At the initial status hearing, it was agreed that discovery would be stayed pending disposition of Lewitton's motion for summary judgment. The parties made reference to Judge St. Eve's July 2007 order [14] in the initial joint status report that they filed shortly before the January 11 status hearing [see 35],[2] but never again mentioned that order, either in their briefing on the summary judgment motion (see [23], [32], [38]) or in any post-judgment motion.

The Court granted summary judgment in favor of Lewitton on September 29, 2008. [See 47.] In so doing, the Court noted that ITA's April 14, 2007, employment contract with Lewitton was a fully integrated, unambiguous document that granted Lewitton 200,000 options that were subject to forfeiture upon fulfillment of two independent conditions: (1) that Lewitton was terminated within the first year of his employment, or (2) that certain performance goals were not

---

[2] This case was one of approximately 240 in which status hearings were held during the week of January 7-11, 2008, as the Court tried to familiarize itself with all of the civil cases on its newly formed docket.

met as of the end of an initial employment assessment period. [See 47, at 14.] The Court determined that none of the 200,000 options were subject to forfeiture pursuant to either condition. [See *id*. at 14-15.] Accordingly, the Court held that Lewitton was "entitled to purchase 104,178 additional shares of ITA common stock at a price of $10 per share, in accordance with the terms of the employment letter." [See *id*. at 16.]

ITA did not file a motion to amend or alter the judgment pursuant to Federal Rule of Civil Procedure 59(e), but rather appealed the Court's decision to the Seventh Circuit. See generally *Lewitton v. ITA Software, Inc.*, 585 F.3d 377 (7th Cir. 2009). On appeal, ITA argued, *inter alia*, that this Court incorrectly interpreted the employment contract with respect to whether Lewitton was entitled to the 104,178 shares. *Id.* at 380-81. ITA argued in the alternative that, should the Seventh Circuit affirm this Court's interpretation of the contract, the case should be remanded to determine "whether 'th[e] options must be exercised within ninety days, or some other defined period of time, or are invalid altogether.'" *Id.* at 381-82. ITA's argument rested on an interpretation of Delaware state law that requires any instrument granting a stock option to state the time period during which the option must be exercised. *Id.*

The Seventh Circuit affirmed this Court's judgment that Lewitton was entitled to the 104,178 disputed options. *Lewitton*, 585 F.3d at 382. In addressing ITA's argument that a remand was necessary to determine the time frame for exercising the options, the Seventh Circuit stated:

> ITA's request for a remand is puzzling given its agreement – memorialized by the district court in an agreed order – that in the event the court found Lewitton was entitled to exercise more than 34,722 shares, ITA would not argue that the options were invalid because they were not exercised within 90 days of his termination. *By assenting to the agreed order, ITA waived any right to raise that argument on appeal*. See *Repa v. Roadway Exp., Inc.*, 477 F.3d 938, 942 (7th Cir. 2007) (noting that waiver is the intentional abandonment of a known right). *ITA **further** agreed* that "the district court's order will determine how and when Mr. Lewitton

4

> *may purchase any or all of the Disputed Shares."* The court failed to specify a date by which Lewitton must exercise his remaining options, but there is nothing in the agreed order saying that the judgment must conform to ITA's view of Delaware law. Instead of filing a motion to correct the judgment pursuant to Federal Rule of Civil Procedure 59(e), ITA requests a remand for the district court to resolve a *hypothetical conflict* that *may arise* if ITA refuses to allow Lewitton to execute the district court's judgment by exercising his options. Should that day arrive, Lewitton *may look again to the courts to resolve the conflict*.

*Lewitton*, 585 F.3d at 382 (emphasis added). Thus, the Seventh Circuit held that, by entering into an agreement that was subsequently embodied in a judicial order, ITA waived not only its right to require Lewitton to exercise within 90 days, but also any other contractual rights that it may have been able to assert to enforce a time limit on Lewitton's exercise of his options – agreeing instead that the *district court* would decide "how and when" Lewitton could purchase the 104,178 shares. *Id.* ITA did not seek rehearing or Supreme Court review of the Seventh Circuit's judgment.

For more than eight months after the Seventh Circuit affirmed the grant of summary judgment in favor of Lewitton [47], the docket in this case remained inactive. One might have anticipated that during that time Lewitton would have taken steps "to execute the district court's judgment by exercising his options," see *Lewitton*, 585 F.3d at 382, that ITA would have allowed him to do so, and that the parties would have gone their separate ways. But that did not occur. Instead, no action was taken in regard to the options until after ITA announced on July 1, 2010, that it was being acquired by Google.

After the ITA-Google merger was announced, Lewitton advised ITA that he intended to exercise the 104,178 options. ITA then took the position that Lewitton should have exercised his option rights earlier (the specifics of ITA's argument are discussed below) and, because he failed to do so, was now too late. Consistent with that position, ITA filed suit in Massachusetts state court in July 2010 seeking a declaration that the options that Lewitton was entitled to exercise

5

under this Court's (and the Seventh Circuit's) decisions had expired and were no longer valid. Around the same time, Lewitton filed a motion before this Court [59] seeking an order to show cause why ITA should not be held in contempt for failure to comply with the Court's summary judgment ruling, as affirmed by the Seventh Circuit. Lewitton later filed a motion [61] asking the Court to join Google as a third-party defendant in this case.

## II. Analysis

### A. Lewitton's Motion for an Order to Show Cause Why ITA Should Not Be Held in Contempt for Failing to Comply with the Court's Order

#### 1. The Contempt Motion

In his motion for an order to show cause why ITA should not be held in contempt [59], Lewitton contends that ITA has willfully refused to comply with this Court's summary judgment ruling, in which the Court determined that Lewitton was entitled to exercise the 104,178 disputed options. The motion requests relief in the form of a stay of the impending ITA-Google merger, an injunction preventing ITA from filing other lawsuits related to the Court's orders, and an award of attorneys' fees and costs. For the reasons below, Lewitton's motion [59] is denied.

A party may be held in contempt of a judicial order when: "(1) the Order sets forth an unambiguous command; (2) [the party] violated that command; (3) [the party's] violation was significant, meaning it did not substantially comply with the Order; and (4) [the party] failed to take steps to reasonabl[y] and diligently comply with the Order." *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008) (internal citations omitted). The party moving for a contempt order bears the burden of establishing that the four-part contempt test is satisfied by clear and convincing evidence. *Id.* Here, Lewitton argues that ITA should be held in contempt because "[t]here is no question that ITA was aware of, and has violated, the Court's command that Lewitton be granted the right to purchase 104,178 shares of ITA stock." [59]

6

The Court first examines whether Lewitton has established that the summary judgment order [47] set forth an unambiguous command. See *Prima Tek II*, 525 F.3d at 542. As stated above, the order [14] signed by Judge St. Eve in July 2007 essentially preserved two issues for this Court to determine: (1) whether Lewitton had a right to the 104,178 shares; and if so, (2) "how and when" Lewitton was to purchase those shares. Regrettably (in hindsight), the Court's opinion granting Lewitton's motion for summary judgment [47] addressed only the former issue, ruling that Lewitton was entitled to the 104,178 shares according to the terms of the employment contract (*i.e.,* the terms describing the number of options to vest during each month of Lewitton's employment). The opinion did not resolve "how and when" Lewitton was to exercise his rights to those shares. At the time that it issued the opinion [47], the Court was not mindful of the July 2007 order [14], and neither party took any action to call that order to the Court's attention, either in the summary judgment briefing or in a post-judgment motion.

Because the opinion was silent on "how and when" Lewitton was to exercise his options, it naturally did not set forth an unambiguous command to that effect. The first element of the contempt claim test thus is not satisfied: ITA cannot be held in contempt for preventing Lewitton from exercising his rights as of a certain date because the Court had not yet determined that date as of the time that Lewitton filed his contempt motion [59]. Accordingly, the Court denies Lewitton's motion [59] for an order to show cause and a contempt finding.

### 2. Determination of How and When Lewitton Must Exercise His Options to the 104,178 Shares of ITA Stock

The disposition of the contempt motion is only the beginning – not the end – of the dispute that the parties have addressed in this new phase of the case. It is at least strongly implicit in the Seventh Circuit's characterization of a "hypothetical conflict" that the court of appeals anticipated that the parties likely would work out an arrangement for exercising the

options on their own. Nevertheless, the court of appeals did note expressly that if such a conflict materialized, "Lewitton may look again to the courts to resolve the conflict." *Lewitton*, 585 F.3d at 382. That time has now come. As this phase of the litigation evolved through briefings and hearings, the parties increasingly devoted their attention to the yet-unresolved question of when, if at all, Lewitton could exercise his options.

ITA has taken the position that a 90-day period for exercising the options still applies. In its opposition to Lewitton's contempt motion, ITA stated that it was "fully prepared to allow Lewitton to exercise within the 90 days, and Lewitton's failure to actuate that right precludes any possibility that ITA be held in contempt." [70, at 6.] That position is untenable for at least two reasons. The first is practical: 90 days from when? The Seventh Circuit's decision? The lapse of time for filing a petition for rehearing? The issuance of the mandate? The expiration of the time for seeking Supreme Court review? There is no principled way to answer that question, and ITA cannot be permitted simply to choose a date out of the air. The second is legal: the Seventh Circuit's waiver ruling (*Lewitton*, 585 F.3d at 382) is law of the case. See *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 454 (7th Cir. 2005) (noting that law-of-the-case doctrine mandates that "when an issue is once litigated and decided, that should be the end of the matter"). Although ITA argues that it would be inequitable to allow Lewitton to now receive a windfall for having "slept on his rights," the Court finds that it would be equally inequitable to penalize Lewitton for not exercising the options as of a deadline that the Court never set.[3]

---

[3] Any attempt by the Court to place Lewitton in essentially the same financial position that he would have been in had he exercised his options at an earlier date – for example, within 90 days of the Court's initial ruling or 90 days of the court of appeals's decision – founders on law-of-the-case grounds as well. In declaring the rights of the parties, this Court determined, and the Seventh Circuit affirmed, Lewitton's option rights to 104,178 shares, not his rights to the *value* of 104,178 shares as of a certain date. See [47]; *Lewitton*, 585 F.3d at 382. To be sure, the parties could have *agreed* to such a disposition, but the Court is not in position to order such a result on equitable grounds.

8

Lewitton argues that the 10-year period under the Stock Option Plan still controls the timing for the exercise of his options. [See, *e.g.,* Pl.'s Reply Br. 73, at 8 (asserting that "the Court's judgment order did not contain a deadline that would change the 10-year expiration of Lewitton's options").] That position also is untenable. To the extent that it relies on the final clause of the Court's ruling that Lewitton is "entitled to purchase 104,178 additional shares of ITA common stock at a price of $10 per share, *in accordance with the terms of the employment letter*" [47, at 16 (emphasis added)], the argument reads more into the opinion than context will permit. As noted above (at 7, *supra*), the parties' summary judgment briefing focused on Lewitton's request for a declaration concerning his asserted right to the 104,178 shares of ITA stock and ignored altogether the question of "how and when" Lewitton was to purchase those shares (if the Court found that he was entitled to do so). The reference in the Court's ruling to the "employment letter" thus pertained only to the number of shares to which Lewitton was entitled, not to the manner in which those shares could be purchased.[4]

Given the reference to the employment letter, Lewitton at least initially had a colorable basis for presuming from the Court's opinion that the 10-year expiration period continued to apply. However, whatever faith he may have put in that reading of this Court's opinion surely evanesced once the Seventh Circuit held that "ITA further agreed [in the Agreed Order] that 'the district court's order will determine how and when Mr. Lewitton may purchase any or all of the Disputed Shares." *Lewitton*, 585 F.3d at 382. The logic of the Seventh Circuit's determination that the agreement constituted a waiver applies equally to Lewitton as to ITA given that Lewitton

---

[4] The employment letter, which referenced the Stock Option Plan in which the 10-year expiration period was specified, stated in pertinent part that the "options will vest as follows[:] in equal monthly installments of 5,556 shares each * * *." It was according to that term of employment that the Court determined the number of shares that Lewitton was entitled to purchase (*i.e.*, 5,556 options that vested over the course of the 25 months that he was employed amounts to 104,178 shares).

9

also agreed to entry of the order and its terms. Simply put, just as ITA waived its contract-based arguments by "assenting to the agreed order" entered by Judge St. Eve (*Lewitton*, 585 F.3d at 382), so too did Lewitton; and just as ITA agreed that the district court was to determine the "how and when," so too did Lewitton.

ITA submits that "the law properly requires certainty in * * * matters [regarding option expiration dates]." [70, at 9 (citing *Marisasch v. Gillette Co.*, 521 F.3d 68, 73 (1st Cir. 2008)).] It is for that very reason that, once the parties waived any contractual rights that otherwise may have dictated the "how and when" – as the Seventh Circuit has held they did (see *Lewitton*, 585 F.3d at 382) – they should have called the Court's attention to its obligation to set the terms according to which Lewitton must exercise the options. But the Court sees no basis for charging the failure to one side or the other.[5]

In view of the parties' dispute regarding the expiration of Lewitton's ITA options, the Court will now resolve the issue assigned to it by agreement of the parties in 2007 in regard to "how and when" Lewitton must exercise the options. [See 14.] The Court's authority to do so is set forth in the Declaratory Judgment Act, which provides that: "[f]urther necessary or proper

---

[5] ITA urges the Court to read the July 2007 order [14] in light of the negotiations that led to its entry. [See Def.'s Supp. Br. 91, at 3-6.] But any attempt by ITA to rely on extrinsic evidence purporting to show the parties' intent not to waive the 90-day period – but instead merely to toll that period – is unavailing. The July 2007 order [14] entered by Judge St. Eve is not a private contract, the meaning of which may be subject to understanding through consideration of extrinsic evidence of the parties' intent. Had the parties simply entered into a private tolling agreement, ITA's argument might not be futile. But once the parties' agreement was presented to and accepted by the Court, it became a binding judicial order. And there is no suggestion in the record that Judge St. Eve was privy to the parties' negotiations prior to the submission of the proposed order. Thus, like the Seventh Circuit, this Court confines its reading of the Agreed Order [14] to the language set forth in its text. See *Lewitton*, 585 F.3d at 382.

Similarly, ITA's suggestion suggests that enforcing Lewitton's right to purchase shares at this time would create inequity between Lewitton and every other ITA option holder is not persuasive. The Court is not aware of any other ITA option holder who (1) had to litigate to determine the number of shares to which he was entitled or (2) entered into a judicial order pursuant to which the court was to determine how and when he was to exercise his share purchase rights. ITA thus has not established that Lewitton stands to be treated differently than any *similarly situated* ITA option holder.

relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. The statute thus permits "declaratory judgment [to] be used as a predicate to further relief." *Powell v. McCormack*, 395 U.S. 486, 499 (1969). Accordingly, the Seventh Circuit has affirmed a three-judge district court panel's issuance of a permanent injunction eight months after the district court rendered declaratory relief (which relief the U.S. Supreme Court had affirmed in the interim) "in order to protect and effectuate its previous judgment." *McCann v. Kerner*, 436 F.2d 1342, 1343 (7th Cir. 1971) (internal quotation marks omitted). Sister circuits similarly have affirmed district court decisions ordering further relief pursuant to declaratory judgments. See, *e.g.*, *Gant v. Grand Lodge of Tex.*, 12 F.3d 998, 1001-02 (10th Cir. 1993) (holding that § 2202 authorized court to issue further ruling to enforce prior decree); *Horn v. Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir. 1988) (affirming subsequent grant of relief following declaratory judgment on ground that § 2202 "'carries out the principle that every court, with few exceptions, has inherent power to enforce its decrees and to make such orders as may be necessary to render them effective'" (quoting E. Borchard, *Declaratory Judgments* 441 (2d ed. 1941)); *Rincon Band of Mission Indians v. Harris*, 618 F.2d 569, 575 (9th Cir. 1980) (affirming district court's grant of declaratory relief and holding that "[i]f further relief becomes necessary at a later point, however, * * * both the inherent power of the court to give effect to its own judgment * * * and the Declaratory Judgment Act * * * would empower the district court to grant supplemental relief" (internal citations omitted)); *Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.*, 255 F.2d 518, 522 (2d Cir. 1958) (holding that under § 2202 a later demand for monetary relief based on declaration of a party's

rights is proper unless barred by laches, and that 11-year delay in seeking further relief did not constitute laches).

The Court therefore invokes its authority – which authority, the Court notes, was forecast both in the July 2007 order entered by Judge St. Eve and in the Seventh Circuit decision in this case, *Lewitton*, 585 F.3d at 382 – to give effect to its prior declaration that Lewitton was entitled to exercise his options. As to "how" Lewitton may exercise his options, the Court hereby rules that Lewitton must tender to ITA the funds necessary to exercise any or all 104,178 options at $10 per share and otherwise comply with the obligations of every other ITA option holder seeking to exercise options. As to "when" Lewitton may exercise his options, the Court determines that in view of the percolation of this issue for a period of months, 60 days from the date of this decision is more than adequate time within which to exercise the options if Lewitton chooses to do so.[6]

### B. Lewitton's Motion to Join Google as a Third-Party Defendant

Lewitton also has filed a motion [61] seeking to join Google as a third-party defendant pursuant to Federal Rule of Civil Procedure 19(a) and seeking to enjoin Google from completing the closing of any purchase of or merger with ITA prior to the Court's ruling on the contempt order motion [59]. Lewitton argues that because (1) the merger between ITA and Google is "impending" and (2) Google's absence from the suit would prohibit the Court from rendering complete relief, Google is a necessary party to the suit. Lewitton further argues that if the Court

---

[6] The Court declines to award attorneys' fees or costs to Lewitton, as he has requested. As the foregoing discussion indicates, both parties could have taken measures to avoid the circumstances that turned the "hypothetical conflict" identified by the Seventh Circuit into the live dispute now before the Court. Having determined that it would be unfair to pin the blame for the delay in resolving the "how and when" issue on either party, it would be equally unfair to foist the litigation costs associated with the disposition of that issue entirely on one side.

does not enjoin the merger and it goes forward, ITA might be a shell corporation from which Lewitton would be unable to obtain substantive relief.

The merger between Google and ITA remains under regulatory scrutiny and has not yet been consummated. The issue of whether Google is a necessary party pursuant to Rule 19 is thus not ripe. See *S. Austin Coalition Community Council v. SBC Communications, Inc.*, 1999 WL 955910, at *2 (N.D. Ill. Jan. 26, 1999) (holding that "[u]nless the merger is approved, there is no justiciable controversy over this action"), *aff'd*, 191 F.3d 842 (7th Cir. 1999). Furthermore, given that the Court (1) has given Lewitton 60 days to exercise his option rights, and (2) previously granted Lewitton's motion [102] for advance notice that a merger closing is imminent, Lewitton's rights with respect to exercising his options prior to the merger (or taking steps to protect those rights post-merger, as necessary) have been preserved. [See Pl.'s Reply Br. 94, at 5 (acknowledging "the fact that a ruling on Lewitton's contempt motion against ITA prior to closing may obviate the need for joinder of Google").] Lewitton's motion to join Google [61] therefore is denied without prejudice.

### III.     Conclusion

For the foregoing reasons, Plaintiff Lewitton's motion for an order to show cause and for a contempt finding [59] is denied and Plaintiff's motion to join Google [61] is denied without prejudice. In addition, Plaintiff is given 60 days from the entry of this memorandum opinion and order to exercise his rights to the 104,178 shares to which he is entitled under this Court's (and the Seventh Circuit's) prior opinions in the manner set forth above.

Dated: November 30, 2010

_____
Robert M. Dow, Jr.
United States District Judge