# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 07 C 4210 | **DATE** | 1/24/2011 |
| **CASE TITLE** | Lewitton vs. ITA Software, Inc. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Plaintiff's motion for modification of the November 30 order [110] is granted in part and denied in part. Consistent with the discussion at the January 14 hearing and in the exercise of its authority to "protect and effectuate" its prior rulings (see *McCann v. Kerner*, 436 F.2d 1342, 1343 (7th Cir. 1971)), the Court clarifies its November 30 order as follows: (1) ITA is required to cashlessly exercise Lewitton's ITA options in the event that the ITA-Google merger closes before the passing of the deadline for the exercise of Lewitton's options; and (2) ITA must take formal Board action on any request by Lewitton to use ITA shares instead of cash to either exercise his options or cover his tax withholding obligations upon exercise. In view of the period of time that lapsed while the parties effectuated the clarification to the November 30 order pertaining to Lewitton's request for Board action, the Court tolls by five days the 60-day period provided in the November 30 order. Accordingly, the deadline for the exercise of Lewitton's options is extended to February 3, 2011. The Court respectfully denies Lewitton's motion in all other respects.[1]

---

[1] Given that the Court allowed Plaintiff to file a response to Defendant's motion for leave to file a sur-reply and has heard argument on the motion and the response thereto, Defendant's motion for leave to file a sur-reply [120] is granted.

■[ For further details see text below.]

Docketing to mail notices.

---

### STATEMENT

This case dates to 2007, when Plaintiff Derek Lewitton tried to exercise his stock options after leaving his employment with Defendant ITA. When ITA refused to allow Lewitton to exercise all of the options to which he believed he was entitled, this litigation commenced.

The litigation came to a head, or so it seemed, when Lewitton moved for summary judgment. In September 2008, the Court ruled in his favor, holding that he was entitled to exercise 104,178 shares of ITA stock at $10 per share. In October 2009, the Seventh Circuit agreed. And because this case did not present an issue worthy of Supreme Court review, that was the end of the story – or so one would have thought. Not so.

The long tail of this litigation stems from the fact that, in addition to the issue briefed by the parties at summary judgment, another issue had been placed on the Court's plate by agreement of the parties while the case was pending on the docket of the previously assigned judge – namely, how and when Lewitton was to exercise the options that the Court determined rightly belonged to him. Although the issue was raised in the Seventh Circuit, neither party raised it in the district court either in the summary judgment briefing or in a motion between the

date on which the summary judgment opinion was issued and the date on which the appeal was taken. The Seventh Circuit declined to take up the issue itself or to remand the matter to this Court to resolve it, presumably because the court of appeals anticipated that the parties would work it out on their own. The court of appeals did, however, expressly state that Lewitton could return to the courts to seek redress should the issue not be resolved independently.

That is exactly what has come to pass. Lewitton did not take prompt action to exercise his options, believing that he had 10 years within which to do so under the terms of ITA's Stock Option Plan. When Lewitton did act (after ITA announced its plans to merge with Google), ITA demurred, insisting that he was too late. Lewitton then filed a contempt motion [59], calling upon the Court to determine whether ITA was correct in asserting that the options had expired or whether Lewitton was correct in insisting that he still had many years to exercise his rights to obtain the shares.

As the Court explained in its November 30, 2010, order [109], neither party's position in regard to the timing issue was tenable in light of (1) the parties' stipulation that the Court was to determine how and when Lewitton must exercise the options and (2) the Seventh Circuit's observation that the Court had authority to so determine if the parties did not resolve the questions on their own. And so when the parties returned to court last year, the Court endeavored to perform the task that the parties assigned to it back in 2007 – to determine "the how and when" – by setting a deadline for Lewitton to exercise the options to which he was (and is) entitled as a result of prevailing in this litigation, and thereby to give effect to the courts' rulings. See 28 U.S.C. § 2202 ("[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment"); see also *Powell v. McCormack*, 395 U.S. 486, 499 (1969) ("declaratory judgment can * * * be used as a predicate to further relief"); *McCann v. Kerner*, 436 F.2d 1342, 1343 (7th Cir. 1971) (court may grant further relief "in order to 'protect and effectuate' its previous [declaratory] judgment").

Specifically, the Court determined that a 60-day period provided sufficient time for Lewitton to exercise his option rights. In selecting that time period, the Court was cognizant of (1) the age of the dispute, (2) the impending ITA-Google merger, (3) the parties' statements at the extended August 24 hearing, and (4) the fact that both parties had had ample opportunity to prepare to consummate the transaction in the event that the Court ordered it to go forward.

Again, the Court believed that its ruling would lay the litigation to rest. However, the parties have once more returned with a dispute – this time concerning "how" rather than "when" Lewitton must exercise his options to the ITA shares. In regard to that issue, the Court's November 30 order stated as follows:

> As to 'how' Lewitton may exercise his options, the Court hereby rules that *Lewitton must tender to ITA the funds* necessary to exercise any or all 104,178 options at $10 per share *and otherwise comply with the obligations of every other ITA option holder seeking to exercise options*.

[See 109 (emphasis added).] That seemingly innocuous statement has generated yet another storm of briefing pursuant to Lewitton's motion for reconsideration [110]. The parties agree that in the wake of the November 30 order, Lewitton contacted ITA seeking to exercise his options. It appears from the correspondence to which the parties referred in the recent briefing that Lewitton first indicated that he would exercise his options in cash. However, on December 16, Lewitton sent ITA 34,722 shares of ITA stock as payment for those options. ITA returned the shares and informed Lewitton that, prior to the ITA-Google merger, Lewitton must pay cash to

exercise the options, and that only after the merger closed could he exercise cashlessly.[2]

In light of this latest impasse, Lewitton now asks the Court to modify the above-quoted statement so as to require ITA to honor Lewitton's cashless exercise. In response, ITA contends that the Court's use of the word "funds" unambiguously mandated that Lewitton's tender be cash and that Lewitton has no grounds upon which to request that the Court modify the order.

As the Court explained at the January 14 hearing, the November 30 order's "how" statement was not written in a vacuum, but rather incorporated the Court's understanding of the common ground between the parties, as expressed on the record at the various hearings on Plaintiff's motion leading up to the November 30 order. To begin with, ITA's contention that the term "funds" unequivocally meant "cash" in all circumstances contravenes ITA's oft-repeated acknowledgment that shareholders would be permitted to exercise their options cashlessly in some circumstances. Most notably, ITA consistently has stated that should the ITA-Google merger close before expiration of the 60-day period, Lewitton may exercise the options cashlessly. See 8/24/10 Tr. at 33 (statement of ITA counsel that "in the event of a merger, *anyone* who currently at that time holds an option will have a cashless exchange of then [*sic*] current price minus strike price" (emphasis added)). Any contention that the Court's use of the term "funds" *requires* the tender of cash in all circumstances also divorces the phrase "Lewitton must tender to ITA the funds" from its qualifier: that Lewitton must do so in the same fashion as "every other ITA option holder seeking to exercise options." That phrase means that Lewitton is entitled to exercise on the same terms as all other option holders. And given that ITA consistently has referenced and relied upon the terms of the Stock Option Plan – which establish payment in cash as the default manner in which an option-holder may exercise his options, but permit shares to be tendered in place of cash *if* the option-holder so requests and *if* the Board of Directors approves the request – that option must be as available to Lewitton as it would be to any other option-holder. See 8/24/10 Tr. at 32-33 (statement of ITA counsel that "where the optionee wants to tender shares in payment of the exercise price rather than tender in case, that's subject to the approval of the Board of Directors and that's not something I could say today your Honor, I'm in a position to agree to").

Lewitton's request that the Court *require* ITA to accept cashless tender is equally untenable. Lewitton relies in support of his position upon ITA's 2007 statements permitting Lewitton to tender shares as payment for the 34,722 stock options that he sought to exercise at that time. As stated above, the parties have spent the interim three years litigating first whether, and then how and when, Lewitton might exercise his remaining 104,178 options. This Court decided in September 2008 that he had a right to those options, and the Seventh Circuit affirmed that decision in October 2009. For eight months after the court of appeals issued its ruling, Lewitton elected not to exercise the 104,178 options. It was only after the ITA-Google merger was announced in July 2010 that he sought to do so. The benefit to Lewitton of having delayed until that time was that, in accordance with the laws of the stock market, the value of ITA shares has likely increased significantly as a result of the impending merger. The downside of the delay is that, in accordance with the laws of physics, time has elapsed and cannot be recaptured; Lewitton cannot now ask the Court to turn the clock to 2007, when ITA stated that it would allow him to tender payment for the 34,722 options using shares. Contrary to Lewitton's contention, the Board's exercise of discretion as to how to tender payment in 2007 cannot be frozen in time, just as the value of the stock options that Lewitton seeks to exercise is not frozen at the 2007 amount. Put simply, the landscape has changed as a result of (1) ITA having refused Lewitton's initial attempt to exercise his options and (2) Lewitton's having waited until after the ITA-Google merger was announced to exercise (and later to ask the Board to permit him

---

[2] For purposes of this opinion, the Court uses the term "cashless exercise" to signify an exercise in which the payment for the stock and for the tax withholding is made in shares of ITA stock.

to tender cashlessly).[3]  ITA may, and indeed must, in fairness to other stock holders, exercise its discretion in response to that particular request.  Moreover, keeping in mind that stock options are an employee benefit that ITA was not obligated to offer, there is no basis for the Court to second-guess ITA's reservation of its right to exercise discretion (through its Board of Directors) in regard to whether to accept cash or shares at the time that an option-holder exercises his or her option rights.

Last month, Lewitton tendered his shares of stock in payment for the 104,178 options, but there is no evidence that Lewitton formally requested that the Board accept the shares in place of cash at that time;  ITA refused to accept the shares, but there is no evidence that it did so through any formal Board action at that time.  At the January 14 status hearing, Lewitton more formally requested that the ITA Board take action on his request to cashlessly exercise his options.  On January 19, the ITA Board of Directors denied that request after determining that it is not in the best interests of the company to permit cashless exercise at this time.  The Board also determined that Lewitton may not use his shares for his tax withholding.

Lewitton contends that the Board's discretionary decisions single him out unfairly.  Yet, during the January 14 hearing, counsel for ITA represented to the Court that in the months since the merger was announced, ITA has denied requests made by several other option-holders for cashless exercise.  The Court has no basis for doubting that assertion or concluding that the Board's decision as to Lewitton's request was unreasonable or made in bad faith, nor has Lewitton proffered any evidence to that effect.  The Court further notes that the business judgment rule mandates that the Court use "a light hand" when it is called upon to examine a discretionary business decision.  *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006).  As such, the Court respectfully rejects Lewitton's protestations regarding the Board's denial of his request to use shares to exercise his options or for tax withholding purposes during this pre-merger period.[4]

The Court denies Lewitton's request to modify the November 30 order by requiring ITA to allow him to cashlessly exercise his options or withhold taxes.  In light of the Board's discretionary refusal of Lewitton's request to use shares in payment for his options (and to cover his tax withholding), Lewitton must tender cash to exercise the options unless and until the ITA-Google merger closes prior to the expiration of the 60-day period.

The Court also is not persuaded by Lewitton's arguments that a lengthy extension (or tolling) of the 60-day exercise period set in the November 30 order is warranted.  The totality of the circumstances shows that Lewitton has had a long period of time in which to take measures that would position him to exercise whatever option rights were available to him.  As early as August 24, 2010, the Court observed that "60 days seems like a reasonable amount of time" for Lewitton to come up with the funds to exercise his options.  8/24/10 Tr. at 16.  At that time, counsel for Lewitton responded that the Court's "60-day suggestion is one that I think makes sense," and added that "if that's where things ended up, I think from plaintiff's position we would be in a good place."  *Id*. at 25.  That is, in fact, "where things ended up," but only after a three-month interlude during which the parties discussed settlement and the Court resolved the legal issues that the parties had briefed in connection with

---

[3]  As the Court previously has noted, the fact that the "how and when" are being resolved in 2010 and 2011, as opposed to some earlier date, is not attributable solely to the action (or inaction) of one party.  Although Lewitton correctly observes that ITA should not create a windfall for having forced Lewitton to litigate his rights to the options, ITA properly notes that Lewitton did not act promptly to exercise (or at least clarify) his rights after securing his victory in the court of appeals.  For these reasons, the Court has declined to assign the consequences of the delay to one side or the other.

[4]  Of course, should Lewitton later uncover some basis for asserting that the Board's decisions were retaliatory or otherwise unfair, he may seek redress.  The Court will not speculate as to whether such a claim would be properly brought in this action or in a separate lawsuit.

---

Plaintiff's original contempt motion. If anything, that additional time benefited Lewitton by giving him a longer period to accumulate the capital needed to exercise his options in the event that the Court's ruling permitted him to do so.

Thus, as of the 60th day as set by the Court's November 30 order, more than six months will have elapsed since Lewitton first sought the Court's intervention and more than five months will have elapsed since the Court first suggested – and Lewitton's counsel agreed – that a 60-day exercise period would be reasonable. Furthermore, the documentary record suggests that on the day after the November 30 order was issued, Lewitton indicated his intent "to exercise the options as outlined by the Court" and asked ITA to "advise us immediately regarding the total amount, such as tax withholding amounts, in addition to the $10 per share that ITA will be requiring Derek to tender to ITA." [110, Ex. A, "12/1/10 e-mail from Lewitton counsel to ITA."] Lewitton further stated that "[g]iven the amount at issue, our preference would be to wire the funds to ITA." *Id.* That communication shows that, at least initially, Lewitton intended to use cash to exercise his options. Subsequent communications indicate that Lewitton wished to use ITA shares to satisfy at least his tax obligations and ultimately in payment for the additional shares as well. See *id.* As stated above, the use of shares in lieu of cash to exercise options always has been a possibility at least in limited circumstances, but never has been a *right* (absent consummation of the merger).

In view of the foregoing, the Court is not persuaded by Lewitton's arguments that a lengthy extension or tolling of the 60-day exercise period set in the November 30 order is warranted. However, because the Court did clarify its November 30 ruling in some (relatively minor) respects at the January 14 hearing – specifically, with respect to the meaning of the word "funds" and the requirement that Lewitton make a formal request and the Board formally determine whether Lewitton could tender shares instead of cash (to ensure that Lewitton is treated like all other option-holders) – the Court will toll the exercise period by five days. That extension equals the length of time that it took for the parties to effectuate the clarification to the Court's November 30 order requiring formal Board action on Lewitton's request. Accordingly, Lewitton has until February 3, 2011 to exercise his options.

At the end of the day, Lewitton's options remain exactly what they always have been since (1) the ITA-Google merger was announced and (2) Lewitton decided that he would like to exercise his options. In particular, as stated on the record at the August 24 hearing, in the event of a merger before the last day of Lewitton's exercise period, Lewitton has a right to "a cashless exchange of then current price minus strike price," but "if there is no merger" by that date, Lewitton (like other ITA option holders) "can't cashlessly exercise anything for anything" absent discretionary Board action (8/24/10 Tr. at 33-34), which now has been denied.